UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TUAREAN PARHAM,

        Plaintiff,                  Case No. 2:22-cv-137

v.                                          Honorable Robert J. Jonker

B. MILLER et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Horton and Batho. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's Eighth and Fourteenth Amendment claims against Defendants Miller, Soelter, Morse, Benson, Woodard, and Dole. The First Amendment retaliation claims against these six defendants remain.

**Discussion**

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corrections Officers B. Miller, Unknown Soelter, Benson, and Woodard, Sergeant Unknown Morse, Warden Connie Horton, Assistant Deputy Warden Unknown Batho, and Unknown Dole RN.

Plaintiff alleges that on June 3, 2021, he wrote a grievance on Defendant Miller for harassment. On June 9, 2021, Defendant Miller called Plaintiff degrading names and said that if he filed another grievance, he would see that a knife was planted in Plaintiff's area of control and Plaintiff would be placed in segregation. On June 19, 2021, Plaintiff was carried to segregation by Defendant Morse. Plaintiff asked why he was being handcuffed and taken to the hole, and Defendant Morse said it was because Plaintiff had written grievances on his officers. Plaintiff was asked to perform a strip search, but Plaintiff refused because he was afraid of being in segregation. Plaintiff again asked why he was being placed in segregation and Defendant Morse said that he was going to make something up. Plaintiff was left in a holding cell for six hours until a group of officers came and "gassed" Plaintiff. (ECF No. 1, PageID.4.) Plaintiff was then carried naked to a segregation cell. Plaintiff states that he could barely breathe due to the gas and was left in the cell feeling like he was going to die. On June 21, 2021, at approximately 3:30 p.m., Defendant Miller came to Plaintiff's cell and asked how the tear gas felt. Plaintiff asserts that following this treatment he suffered mentally and emotionally and that his healthcare file will show that he did not eat for weeks afterward.

Plaintiff was released from segregation on July 13, 2021. On July 14, 2021, Defendant Benson asked, "You still haven't put your bunky out Parham?" (ECF No. 1, PageID.5.) Plaintiff

questioned Defendant Benson about the comment and was told, "Because he likes it up the ass." (*Id.*) When Plaintiff protested that it was dangerous for him to be in a cell with a known homosexual, Defendant Benson told him to "kick his ass." (*Id.*) When Plaintiff attempted to explain the danger of the situation, Defendant Benson pressed the emergency button and Plaintiff was taken to the Steamboat segregation unit. Plaintiff received misconducts for threatening behavior and disobeying a direct order.

On August 30, 2021, after Plaintiff was placed back in Round Unit, Defendant Miller came to Plaintiff's cell and called him a "faggot bitch." (*Id.*) Later that day, Defendant Miller told Plaintiff that if he kept writing grievances, he was going to write more misconducts on him. On September 21, 2021, Defendant Soelter ordered Plaintiff back to his cell while Plaintiff was waiting to shower and accused Plaintiff of shoving something under a door to another inmate. Plaintiff denied passing anything to another prisoner and asked why he was not being allowed to shower. Defendant Soelter told Plaintiff to stop writing grievances and then maybe he would be allowed to shower.

On September 23, 2021, Defendant Miller told Plaintiff that he wanted him in the hole and was going to set Plaintiff up. That evening, Defendants Miller and Woodard summoned Plaintiff to the lobby and when Plaintiff refused, they called for backup. Plaintiff began to experience a panic attack and begged for help when he was tazed by an officer and carried to the Steamboat segregation unit. Defendant Woodard wrote a misconduct on Plaintiff for creating a disturbance, but Plaintiff was found not guilty and the ticket was dismissed. Since that time, Defendant Woodard has been conducting all the hearings on misconducts written by Defendant Miller. Defendant Woodard found Plaintiff guilty each time and gave him the maximum number of days

on sanction. Plaintiff states that this conduct has continued for the past thirteen months and that he finally wrote to the Ombudsman seeking relief.

On October 1, 2021, Defendant Miller came to Plaintiff's cell and said, "You are a dumb fuck boy . . . Have fun in Segregation . . . Bitch!" (*Id.*, PageID.6 (alterations in original).) Later that evening, Defendant Dole yelled at Plaintiff, stating that there was nothing wrong with him. Plaintiff asserts that Defendant Dole was so overwrought that she spit in his face while speaking.

On May 12, 2022, after Plaintiff had been sent to medical with chest pain, Defendant Dole called Defendant Miller and told him that Plaintiff had not been experiencing chest pain. Defendant Miller then wrote a misconduct on Plaintiff for lying to an employee. Plaintiff wrote to Defendants Horton and Batho complaining about the incident, but never received a response. Plaintiff asserts that since being subjected to the named Defendants' harassment, he has developed high blood pressure, depression, and anxiety, which require prescription medication.

Plaintiff states that he has copies of at least twenty-four tickets from Defendant Miller, which have kept Plaintiff on loss of privileges until at least November of 2022.

Plaintiff appears to be asserting claims under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks damages and equitable relief.

**II.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief

that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Horton and Batho

As noted above, Plaintiff states that he wrote to Defendants Horton and Batho to complain about Defendant Dole's conduct in lying about Plaintiff's chest pain to Defendant Miller. Plaintiff asserts that he never received a response to his correspondence. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed

5

constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Horton and Batho encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events surrounding Plaintiff's

6

reclassification to administrative segregation. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 action is premised on nothing more than respondeat superior liability, his action fails to state a claim against Defendants Horton and Batho.

### B. Retaliation Claims

Plaintiff appears to be asserting multiple violations of his First Amendment right to be free from retaliation. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As set forth above, Plaintiff specifically alleges that Defendants Miller, Soelter, Morse, Benson, and Dole wrote numerous tickets, ensured that he was found guilty of false misconduct tickets, and had him placed in segregation in retaliation for Plaintiff's use of the grievance procedure. The Court concludes that Plaintiff has alleged sufficient facts to support retaliation claims against Defendants Miller, Soelter, Morse, Benson, and Dole.

### C. Eighth Amendment Claims

Liberally construing Plaintiff's complaint, the Court assumes that Plaintiff intends to set forth Eighth Amendment claims against Defendants. The Eighth Amendment prohibits any punishment which violates the civilized standards of humanity and decency, or involves the unnecessary and wanton infliction of pain. *See Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). To prove an Eighth Amendment violation, an inmate must show that he has been deprived of the minimum civilized measures of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

To the extent that Plaintiff claims that his placement in segregation and the loss of privileges he suffered as the result of false misconduct tickets violated his Eighth Amendment rights, the Court notes that because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is typically insufficient to support an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008); *see also Lacey v. Michigan Dep't of Corr.*, No. 95-1097, 1995 WL 564301 (6th Cir. Sept. 21, 1995) (placement in detention did not violate Eighth Amendment); *Eaddy v. Foltz*, No. 85-1419, 1985 WL 14065 (6th Cir. Dec. 18, 1985) (whether an Eighth Amendment claim is stated for placement in segregation depends upon severity or pervasiveness of conditions). Therefore, any Eighth Amendment claims related to Plaintiff's placement in segregation and to the loss of his privileges are properly dismissed.

The Court notes that Plaintiff also asserts that he was subjected to a chemical agent and tazed. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places

restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

With regard to Plaintiff's claim that on June 19, 2021, he was left in a holding cell for six hours until a group of officers came and "gassed" Plaintiff, he fails to allege that any of the named Defendants were involved in that incident. Nor does Plaintiff allege that any of the named Defendants were directly involved with the decision to taze him on September 23, 2021. Consequently, Plaintiff's Eighth Amendment claims related to these incidents are properly dismissed.

Plaintiff fails to allege facts showing that any named Defendant disregarded an excessive risk to his health or safety. Accordingly, the Court will dismiss his Eighth Amendment claims.

### D. Due Process Claims

Plaintiff broadly claims that he was subjected to false misconduct tickets and convictions. To the extent that Plaintiff asserts a violation of his procedural due process rights, Plaintiff's claim fails. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Plaintiff does not allege that his misconduct convictions have any effect on the duration of his sentence—and he cannot. Plaintiff was sentenced to 9 to 30 years in prison on October 16, 2013, for the crime of armed robbery, and 2 years in prison for the crime of felony firearm. https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=636733 (last visited Aug. 19, 2022). Plaintiff committed both crimes on April 18, 2013. (*Id.*) For a prisoner like Plaintiff, who is serving a sentence for an offense committed after 2000, even a major misconduct conviction results only in the accumulation of "disciplinary time." Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Therefore, even the most severe of the misconduct convictions had no impact on the duration of Plaintiff's sentence.

Nor did Plaintiff's misconduct convictions result in an atypical and significant hardship. Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S.

460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

According to the allegations in Plaintiff's complaint, he was placed in segregation on June 19, 2021, and was released back to the general population on July 13, 2021. (ECF No. 1, PageID.3-5.) Plaintiff was returned to segregation on July 14, 2021, and was placed back in the general

11

population on August 30, 2021. (*Id.*, PageID.5.) Plaintiff then makes vague assertions that he was sporadically returned to segregation at various times, and that he was on loss of privileges during each of these time periods. The Court concludes that Plaintiff has failed to allege that the duration of his segregation was for a period of time that would implicate a liberty interest.

Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105E (eff. Apr. 18, 2022). Where a stay of that duration in segregation is not considered an atypical or significant hardship, it defies logic to suggest that the lesser penalty of "loss of privileges" for that duration could be atypical or significant. Sixth Circuit authority bears that out. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that a fourteen-day loss-of-privileges sanction did not implicate the due-process clause); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (nine-month loss of package privileges did not impose an atypical and significant hardship); *Miles v. Helinski*, No. 20-1279, 2021 WL 1238562, at *4 (6th Cir. Jan. 29, 2021) (five days' toplock and five days' loss of privileges fails to state a due process claim); *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) ("thirty days' loss of privileges—did not implicate a protected liberty interest"); *Langford, v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017) (thirty-days' toplock and thirty-day's loss of privileges "does not amount to an 'atypical and significant hardship'").

Plaintiff fails to allege any facts showing that he was subjected to conditions which would implicate a liberty interest as a result of the allegedly false misconduct tickets. Therefore, Plaintiff's due process claims are properly dismissed.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Horton and Batho will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's Eighth and Fourteenth Amendment claims against Defendants Miller, Soelter, Morse, Benson, Woodard, and Dole. Plaintiff's retaliation claims against Defendants Miller, Soelter, Morse, Benson, Woodard, and Dole remain in the case.

An order consistent with this opinion will be entered.

Dated: September 23, 2022        /s/ Robert J. Jonker
                                 Robert J. Jonker
                                 United States District Judge