UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TUAREAN PARHAM #636733,                           Case No. 2:22-cv-00137

                    Plaintiff,                    Hon.  Robert J. Jonker
                                                  U.S. District Judge
          v.

B. MILLER, et al.,

                    Defendants.
_____/

## **REPORT AND RECOMMENDATION**

### I. **Introduction**

This Report and Recommendation (R&R) addresses a motion for summary judgment filed by Defendants Morse and Benson based on alleged Plaintiff's failure to exhaust his administrative remedies.  (ECF No. 22.)  Plaintiff has not filed a response.

State prisoner Tuarean Lovel Parham filed an unverified complaint, pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was confined at the Chippewa Correctional Facility (URF).  (ECF No. 1.)  On September 23, 2022, the Court issued an opinion and order dismissing two of the original defendants as well as Parham's Eighth and Fourteenth Amendment claims.  (ECF Nos. 8, 9.)  Only Parham's retaliation claims remain.  And six defendants remain in the case.  They are:  Corrections Officer (CO) Miller, CO Soeltner, Sergeant (Sgt.) Morse, CO Benson, CO Woodard, and Registered Nurse (RN) Doyle.  (ECF No. 8, PageID.157.)

Four of the defendants – CO Miller, CO Soeltner, CO Woodard and RN Doyle – concede that Parham exhausted claims against them.   Sgt. Morse and CO Benson move for dismissal, arguing that Parham has failed to exhaust his claims against them.     In the opinion of the undersigned, Sgt. Morse and CO Benson have demonstrated that Parham failed to exhaust his claims against, thus satisfying their burden under Rule 56.  Accordingly, the undersigned respectfully recommends that the Court grant their motion for summary judgment and dismiss them from this case.

## II.  Plaintiff's Allegations

Parham alleges that he wrote a grievance for harassment against CO Miller on June 3, 2021.  (ECF No. 1, PageID.4.)  On June 9, 2021, CO Miller told Parham that "you're a piece of shit and a dumb fuck . . . write another grievance and see that a knife is in your area of control and you ass will be in seg.  You're fucking done dude." (*Id.*)   Parham says that he was sent to segregation on June 19, 2021. (*Id.*)

Parham says he was tear-gassed and stripped-searched in his cell on that date. (*Id.*)  Then Sgt. Morse carried him to segregation after telling Parham it was "because you're writing grievances on my officers."  (*Id.*)  Sgt. Morse told Parham he would make something up to justify sending him to segregation. (*Id.*)   Later that day, CO Miller visited Parham at his cell and asked, "how does that tear gas feel?"  (*Id.*)

After Parham was released from segregation, CO Benson asked him, "you still haven't put your bunky out Parham?"  CO Benson allegedly told Parham, "well, kick his ass."  (*Id.*, PageID.5.)  CO Benson pressed the emergency button and Parham was

taken to a different unit and found guilty of a misconduct ticket for threatening behavior and disobeying a direct order.  (*Id.*)

On August 30, 2021, CO Miller told Parham that if he continued to write grievances, Miller would continue to give him misconduct tickets.  (*Id.*)

On September 21, 2021, CO Soeltner ordered Parham back to his cell while he was waiting to take a shower, because Parham had allegedly passed something to another prisoner under a door.  (*Id.*)  CO Soeltner told Parham if he stopped writing grievances, maybe he would be allowed to shower.  (*Id.*)

On September 23, 2021, CO Miller told Parham that he was going to set him up so he could put him in segregation.  (*Id.*)   A few minutes later, CO Miller and CO Woodard told Parham to report to the lobby, but Parham refused.  Parham says he had a panic attack. (*Id.*)  Parham says that he was shot with a taser gun and taken to a segregation unit.  (*Id.*)   Parham says that CO Woodard wrote him a misconduct ticket for creating a disturbance.   That ticket was dismissed.  (*Id.*)

After that ticket was dismissed, CO Woodard started acting as the hearing officer on the numerous misconduct tickets issued by CO Miller.  CO Woodard found Parham guilty on every ticket and imposed the maximum sanction allowed.  Parham says that CO Miller issued him at least twenty-four misconduct tickets.   (*Id.*, PageID.6.)

On October 1, 2021, CO Miller slid a misconduct ticket under Parham's cell door and said he should have fun in segregation.  According to Parham, RN Doyle

visited him and stated that there was nothing wrong with him and got so excited she spit in Parham's face.  (*Id.*)

On May 12, 2022, Parham was taken to health care because he was having chest pains.  (*Id.*)  After RN Doyle told him he was not having chest pain, CO Miller wrote Parham a misconduct ticket for lying to an employee.  (*Id.*)

### III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

---

[1]    If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue.  (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

## IV.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions

under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal

review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019).  According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id*. at ¶ Q.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id*. at ¶¶ Q, W.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id*. at ¶ Y.   The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id*. at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  *Id*. at ¶ DD.  The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130.  *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I.  *Id.*  Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140.  The prisoner will be promptly notified if an extension of time is needed to investigate the grievance.  *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681,

---

[2]  Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts."  MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

693-94.  If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94.  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process.").  An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits.  *See id*. at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court."  *Id*. at 324.

10

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## V. Grievances Identified by Defendants

In their motion for summary judgment, Defendants identified grievances that

Parham filed with the MDOC.  These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date of Incident | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| URF-21-10-2458-22g (ECF No. 23-3, PageID.228-232.) | McLern, Montie, Anderson | Removed from cell, clothing cut off and denied food | October 2, 2021 | Denied | Denied | Denied |
| URF-21-10-2440-12e4 (*Id.*, PageID.233-237.) | Doyle | Spit in his face, used a racial name, and told him to hang himself due to filing grievances | October 1, 2021 | Denied | Denied | Denied |
| URF-21-06-1560-28e (*Id.*, PageID.238-241.) | Miller | Used derogatory and humiliating language and threatened to plant a knife in Plaintiff's area of control if he continued to write grievances | June 3, 2021 | Denied | Denied | Rejected |
| URF-21-06-1469-28e (*Id.*, PageID.242-245.) | Miller | Used derogatory and humiliating language, threatened to write grievances, and denied Plaintiff a shower | May 26, 2021 | Denied | Denied | Rejected |
| URF-21-06-1662-28e  (*Id.*, PageID.246-249.) | Anderson | Excessive force: tear-gassed after complying with order to strip in his cell | June 19, 2021 | Denied | Denied | Rejected |

---

[3]     In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."   *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

## VI.  **Misconducts Tickets Identified by Defendants**

Defendants also specifically identified eight relevant misconduct tickets issued to Parham.[4]   These misconducts are summarized below.

| Issuing officer | Allegation(s) | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing | Results of Misconduct Appeal |
|---|---|---|---|---|---|
| Morse (ECF No. 23-4, PageID.256-259.) | Threatening behavior during escort | June 19, 2021 | June 23, 2021 | Guilty; **did not raise issue of retaliation** | Unknown |
| Benson (*Id.*, PageID.260-264.) | Threatening behavior | July 14, 2021 | July 19, 2021 | Guilty; **did not raise issue of retaliation** | Unknown |
| Soeltner  (*Id.*, PageID.265-267.) | Possession of stolen property/ theft of cleaning supplies | August 4, 2021 | Waived | Pleaded guilty | No appeal |
| Soeltner  (*Id.*, PageID.268.) | Unauthorized occupation of a cell or room | August 4, 2021 | Waived | Pleaded guilty | No appeal |
| Miller (*Id.*, PageID.269-270.) | Insolence | September 7, 2021 | September 16, 2021 | Guilty; **raised issue of retaliation** | Unknown |
| Miller  (*Id.*, PageID.271-275, 286-287.) | Disobeying a direct order | September 23, 2021 | September 28, 2021 | Guilty; **raised issue of retaliation** | Denied: **raised retaliation** |
| Woodard (*Id.*, PageID.276-280, 290-291.) | Threatening behavior/ creating a disturbance | September 23, 2021 | September 28, 2021 | Guilty of threatening behavior; creating a disturbance charge dismissed due to no allegations in support; **raised the** | Denied: **raised retaliation** |

---

[4]     The Misconduct Summary Report shows that Parham has received 87 misconduct tickets from November 23, 2014, to August 1, 2023.  (ECF No. 23-4, PageID.253-255.)

| Issuing officer | Allegation(s) | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing | Results of Misconduct Appeal |
|---|---|---|---|---|---|
| | | | | **issue of retaliation** | |
| Soeltner (*Id.*, PageID.281-285.) | Disobeying a direct order | December 8, 2021 | December 13, 2021 | Guilty; **did not raise issue of retaliation** | Unknown |

## VII. Analysis

As noted above, COs Miller, Soeltner and Woodard, and RN Doyle concede that Parham exhausted claims asserted against them. (ECF No. 23, PageID.209.)

Only CO Bensen and Sgt. Morse argue that they are entitled to dismissal due to Parham's failure to exhaust administrative remedies. Therefore, the Court will only consider the identifiable claims in the complaint asserted against Benson and Morse in this R&R.

### A. Exhaustion of Claim against Sgt. Morse

As noted above, Parham alleges that Sgt. Morse was involved in retaliating against him by tear-gassing him and removing him from this cell on June 19, 2021. The record before the Court includes only one grievance and one misconduct ticket relating to events that day.

First, Parham filed grievance URF-21-06-1662-28e, asserting that he was subjected to excessive force on that date. A review of the documents associated with the events of June 19, 2021, shows that Parham did not name Sgt. Morse in his grievance. The Step I grievance for that date is shown below.

13

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247  10/94
CSJ-247A

Date Received at Step I  6-23-21      Grievance Identifier:  U R F 2 1 0 6  1 1 6 6 2  2 6 A

Be brief and concise in describing your grievance issue.  If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| laurean  Parham | 656733 | URF | Q-5 | 6/19/21 | 6/21/21 |

What attempt did you make to resolve this issue prior to writing this grievance?  On what date? 6/19/21
If none, explain why. I WAS tear gas sprayed after complying with Sgt. Anderson to strip. I already took off my pants and shirt to resolve the issue But Sgt. Anderson still insistant on tear gasing me.

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used.
Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. P.D. Cruel and unusual punishment, Abuse of Authority, Harrasment, & violation of Due Process. On 6/19/21 in Quarry unit around 5:30-7:30 PM I was up getting Tear gased while complying. I gave Sgt. Anderson a thumbs up indicating submission Sgt. Anderson. After being sprayed in the face, continued spraying me while naked. After taking off my watch Sgt. Anderson commanded me to "Bend over and spread my Buttocks" I was then sprayed in my buttocks, and genital area while I was then ordered to lifting my genitals. (being compliant) I complied, But still Aggessivly forced step out of the Holding cell, I complied, But still Aggessivly forced To my cell. At no time was offered any help or treatment. I was Brutally sprayed with tear gas all over my Body and thrown into A cell grasping for air feel as though I will soon Be taking my last breath. I am a mental health patient. It was very difficult for me to comprehend what was happening which led to being tear gased.        J.P.

Grievant's Signature

(ECF No. 23-3, PageID.248.)

Parham only named a non-defendant – Sgt. Anderson – in his grievance.  The

Step I response (*id.*, PageID.249) confirms that Parham identified Sgt. Anderson as

the subject of the grievance.  And Parham's Step II and III appeals (*id.*, PageID.247)

offer no reason to conclude that Parham was actually discussing actions by Sgt.

Morse.

The undersigned concludes that Sgt. Morse has shown that Parham never exhausted this claim by naming him in a grievance.

The record before the Court also indicates that Sgt. Morse issued a threatening behavior misconduct ticket to Parham on June 19, 2021, for conduct that occurred during his escort of Parham from medical to his housing unit.   The facts set forth in the misconduct ticket relate to an escort, not to a cell extraction.   Nevertheless, it is worth noting that Parham was found guilty of the ticket but failed to exhaust a retaliation claim based upon the ticket by raising retaliation during the hearing and then by asserting retaliation in an appeal.   (ECF No. 23-4, PageID.256-257.)   The Hearing Report stated:

---

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

The hearing is conducted via video teleconferencing.  Unless otherwise noted all documents are one page.  The prisoner is present and the misconduct report is reviewed with him along with his statement he did not say it and does not have a back issue, and Misconduct Screening Form.  Prisoner Parham states that he was being walked back from health care, he asked for a wheel chair since he was having issues walking, he was told no because the nurse said he did not need one, he asked the sergeant, the sergeant said no either walk or go to segregation, he said he would walk but it is hard so be patient, the sergeant said I have no patience walk or go to seg, he said he would then kneeled down on the ground, and the sergeant got on his radio and said he had to go to steamboat and was told to take him to Quarry.  Prisoner has nothing further to add.  No further evidence is needed.  Prisoner is informed of the findings, sanctions and sanction dates and told he will receive the report later.

**REASONS FOR FINDINGS**

Prisoner Parham said to Sgt Morse "If my back wasn't fucked up I'd kick your ass." on 6-19-21 at 1134 hrs.  I find that this statement by its very nature expresses an intent to physically harm the officer.  Prisoner Parham's statement is not believed because per his own statement during an officer escort to his unit he was told to walk to his unit and he instead kneeled on the ground so he would have been guilty of an Assault and Battery for physically resisting staff in the performance of their duties (ie walking him to his unit) so if that was true the Sergeant would have no reason to lie and set him up on Threatening Behavior when he could have written him for Assault and Battery instead by telling the truth.  The Sergeant is clear and factual in his statement and is found to be credible.  The charge is upheld.

---

(ECF No. 23-4, PageID.256.)

The undersigned concludes that Sgt. Morse has established that Parham failed to exhaust retaliation claims against him.   Parham has failed to show otherwise.   In the opinion of the undersigned, the Court should dismiss Sgt. Morse.

**B. Exhaustion of Claim against CO Benson**

Parham alleges that Defendant Benson issued a false retaliatory misconduct ticket on July 14, 2021, for threatening behavior and disobeying a direct order. Parham was found guilty of the threatening behavior ticket during the hearing. The Hearing Report is shown below.

---

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

Prisoner is present for the hearing and the misconduct report is reviewed 1 page, a statement rom prisoner Parham 1 page, a sanction assessment 1 page and a screening form 1 page.   Prisoner states he is not guilty and I was placed with a homosexual. I tried to talk to the officer about and we both went down and asked to be moved.  The officer just told me to kick his ass and that's not right just because he is a homosexual.  We had an argument and my body language did not look good but I did not threaten him.  I know my word is not as good as his word  and I never said I would kick his ass and declines further statement.    No further evidence is requested or is necessary. Prisoner is informed of the sanction and the decision and told that a copy of the heairng report would be delivered to him.

---

**REASONS FOR FINDINGS**

I find prisoner Parham knows right from wrong and is able to follow the rules of the Michign Dept of Corrections. Prisoner Parham's statement at hearing are construed as a request for disqualifiaction.  I do not know prisoner Parham personally and I capable of rendering a fair and impartial  heairng  in this matter and prisoner Parham request for disqualification is denied.    Pursuant to Pd 03.03105 Threatening Behavior........... words or actions that express an intent to injure.......  Prisoner  Parham stated to the reporting officer on 7-14-2021 at 1050  hrs in the Round unit Lobby, this is my world bitch, next time you step out of that cage you'll see what happens,  I'm going to fuck you up Benson.    I find that prisoner Parham did express an intent to injure  the reporting  officer by his above statement. Prisoner Parham is not believed in his statement that he did not make the threat because  officer Benson observed and heard prisoner Parham make the above statement from  two feet with direct eye contact  and did ID him by OTIS and the unit master count board.    Officer Benson  is  detailed and clear  in his  statements and found credible.  The charge is sustained.

---

(ECF No. 23-4, PageID.260.)

Parham did not exhaust his retaliation claim against Defendant Benson because he did not raise the issue of retaliation during the misconduct hearing. Parham has failed to show otherwise.  In the opinion of the undersigned, the Court should dismiss Defendant Benson.

16

## VIII.  Recommendation

The undersigned respectfully recommends that this Court dismiss Sgt. Morse and CO Bensen without prejudice due Plaintiff's failure to exhaust administrative remedies.

If the Court accepts this recommendation, Plaintiff's retaliation claims against COs Miller, Soeltner and Woodard, and RN Doyle will remain.


Dated:   March 26, 2024                         /s/ *Maarten Vermaat*
                                                MAARTEN VERMAAT
                                                U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).