UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TUAREAN PARHAM #636733,                           Case No. 2:22-cv-00137

                Plaintiff,                     Hon.  Robert J. Jonker
                                                  U.S. District Judge
    v.

B. MILLER, et al.,

                Defendants.

_____/

## **REPORT AND RECOMMENDATION**

### I. Introduction

This Report and Recommendation addresses Defendants' motions for summary judgment.  (ECF No. 37.)  Plaintiff has not filed a response.[1]

State prisoner Tuarean Lovel Parham filed an unverified complaint, pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was confined at the Chippewa Correctional Facility (URF).  (ECF No. 1.)  On September 23, 2022, the Court issued an opinion and order dismissing two of the original defendants as well as Parham's Eighth and Fourteenth Amendment claims.  (ECF Nos. 8, 9.)  On April 18, 2024, the Court dismissed two more defendants.  (ECF No. 26.)

---

[1]    Instead, Plaintiff submitted a letter stating that he was seeking "monetary relief for the mental damages caused by Defendants" and that "excessive ticket writing is against policy."  (ECF  No. 41.)

The remaining claims are retaliation claims against Corrections Officers (COs) Miller, Soeltner and Woodard, and RN Doyle.  (ECF No. 24, PageID.310 (Report and Recommendation); ECF No. 26 (Order adopting Report and Recommendation).)

Defendants Miller, Soeltner, Woodard, and Doyle move for summary judgment on the remaining retaliation claims against them due to Plaintiff's failure to exhaust some of his claims, lack of merit, and immunity.  Plaintiff has not responded to Defendants' motion for summary judgment.   In the opinion of the undersigned, Defendants' have met their burden of showing that no genuine issue of material fact exists on the remaining claims, and Plaintiff has failed to rebut their showing with admissible evidence.  Therefore, it is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss  this case.

## II.  Plaintiff's Relevant Allegations

Parham alleges that he wrote a grievance for harassment against CO Miller on June 3, 2021.  (ECF No. 1, PageID.4.)  On June 9, 2021, CO Miller told Parham that "you're a piece of shit and a dumb fuck . . . write another grievance and see that a knife is in your area of control and you ass will be in seg.  You're fucking done dude." (*Id*.)  Parham says that he was sent to segregation on June 19, 2021. (*Id*.)

On August 30, 2021, CO Miller allegedly told Parham that if he continued to write grievances, Miller would continue to give him misconduct tickets.  (*Id*.)

On September 21, 2021, CO Soeltner allegedly ordered Parham back to his cell while he was waiting to take a shower, because Parham had allegedly passed

something to another prisoner under a door. (*Id*.) CO Soeltner told Parham if he stopped writing grievances, maybe he would be allowed to shower. (*Id*.)

On September 23, 2021, CO Miller allegedly told Parham that he was going to set him up so he could put him in segregation. (*Id*.) A few minutes later, CO Miller and CO Woodard told Parham to report to the lobby, but Parham refused. Parham says he had a panic attack. (*Id*.) Parham says that he was shot with a taser gun and taken to a segregation unit. (*Id*.) Parham says that CO Woodard wrote him a misconduct ticket for creating a disturbance. That ticket was dismissed. (*Id*.)

After that ticket was dismissed, CO Woodard started acting as the hearing officer on the numerous misconduct tickets issued by CO Miller. CO Woodard found Parham guilty on every ticket and imposed the maximum sanction allowed. Parham says that CO Miller issued him at least twenty-four misconduct tickets. (*Id*., PageID.6.)

On October 1, 2021, CO Miller allegedly slid a misconduct ticket under Parham's cell door and said he should have fun in segregation. According to Parham, RN Doyle visited him and stated that there was nothing wrong with him and then got so excited that she spit in Parham's face. (*Id*.)

On May 12, 2022, Parham was taken to health care because he was having chest pains. (*Id*.) After RN Doyle told him he was not having chest pain, CO Miller wrote Parham a misconduct ticket for lying to an employee. (*Id*.)

### III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138

---

[2]    The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury.  *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).  If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue.  *Richards v. Perttu*, 96 F.4th 911, 923 (6th Cir. 2024), *cert. granted*, No. 23-1324, 2024 WL 4394132 (U.S. Oct. 4, 2024).  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence.  *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

## IV.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

5

process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737). And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally

furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019).  According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y.  The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after

the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For

example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[3], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94.  If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94.  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the

---

[3]    Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts."  MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

## V. Grievances and Claims

Parham filed three grievances. The one that named Defendant Doyle was denied on the merits at each step of the MDOC grievance process, and the two that named Defendant Miller were rejected at Step III of the process. These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date of Incident | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| **Claim 1:** URF-21-10-2440-12e4 (ECF No. 23-3, PageID.233-237.) | Doyle | Spit in his face, used a racial name, and told him to hang himself due to filing grievances | October 1, 2021 | Denied | Denied | Denied |
| **Claim 2:** URF-21-06-1560-28e (*Id.*, PageID.238-241.) | Miller | Used derogatory and humiliating language and threatened to plant a knife in Plaintiff's area of control if he | June 3, 2021 | Denied | Denied | Rejected |

---

[4]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

| Grievance No. | Person Named | Allegation | Date of Incident | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| | | continued to write grievances | | | | |
| **Claim 3:** URF-21-06-1469-28e (*Id.*, PageID.242-245.) | Miller | Used derogatory and humiliating language, threatened him, and denied Plaintiff a shower | May 26, 2021 | Denied | Denied | Rejected |

## VI.  Misconduct tickets and Claims

Defendants have identified 19 misconduct tickets that form the bases for Parham's remaining claims.  They are summarized below:

| Claim No. and Issuing officer | Allegation(s) | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing | Results of Misconduct Appeal |
|---|---|---|---|---|---|
| **Claim 4:** Miller (ECF No. 1-2, PageID.28.) | Insolence | May 26, 2021 | Waived | Pled Guilty | None |
| **Claim 5:** Miller (*Id.*, PageID.29-31.) | Excessive Noise | May 26, 2021 | May 31, 2021 | Guilty – Raised retaliation | Unknown |
| **Claim 6:** Soeltner (ECF No. 1-3, PageID.55.) | Abuse of Privileges | July 31, 2021 | Unknown | Unknown | Unknown |
| **Claim 7:** Soeltner (ECF No. 23-4, PageID.265-267.) | Possession of stolen property/ theft of cleaning supplies | Aug. 4, 2021 | Waived | Pled Guilty | None |
| **Claim 8:** Soeltner (*Id.*, PageID.268.) | Unauthorized occupation of a cell or room | Aug. 4, 2021 | Waived | Pled Guilty | None |
| **Claim 9:** Miller (ECF No. 1-1, PageID.26.) | Excessive noise | Aug. 16, 2021 | Unknown | Unknown | Unknown |
| **Claim 10:** Miller (*Id.*, PageID.25.) | Unauthorized communication | Aug. 30, 2021 | Unknown | Unknown | Unknown |
| **Claim 11:** Miller (ECF No. 23-4, PageID.269-270.) | Insolence | Sept. 7, 2021 | Sept. 16, 2021 | Guilty – Raised retaliation | Denied: raised retaliation |
| **Claim 12:** Soeltner (ECF No. 1-3, PageID.56.) | Violation of posted Rule #4 | Sept. 17, 2021 | Unknown | Unknown | Unknown |

| Claim No. and Issuing officer | Allegation(s) | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing | Results of Misconduct Appeal |
|---|---|---|---|---|---|
| **Claim 13:** Miller (ECF No. 23-4, PageID.271-275, 286-287.) | Disobeying a direct order – Class I | Sept. 23, 2021 | Sept. 28, 2021 | Guilty – Raised retaliation | Denied: raised retaliation |
| **Claim 14:** Woodard (*Id.*, PageID.276-280, 290-291.) | Threatening behavior and creating a disturbance – Class I | Sept. 23, 2021 | Sept. 28, 2021 | Guilty of threatening behavior, and dismissing creating a disturbance – Raised retaliation | Denied: raised retaliation |
| **Claim 15:** Miller (ECF No. 1-1, PageID.21-23.) | Excessive noise | Nov. 21, 2021 | Nov.  29, 2021 | Guilty – Did not raise retaliation | Unknown |
| **Claim 16:** Miller (ECF No. 1-2, PageID.36-38.) | Unauthorized communication | Nov. 23, 2021 | Nov. 29, 2021 | Guilty – Did not raise retaliation | Unknown |
| **Claim 17:** Miller (ECF No. 1-1, PageID.20-21.) | Excessive noise | Dec. 1, 2021 | Unknown | Unknown | Unknown |
| **Claim 18:** Soeltner (ECF No. 23-4, PageID.281-285.) | Disobeying a direct order | Dec. 8, 2021 | Dec. 13, 2021 | Guilty – Did not raise retaliation | Unknown |
| **Claim 19:** Miller (*Id.*, PageID.18.) | Cell Rules – Violation of Posted Rule #44 | Jan. 21, 2022 | Waived | Pled Guilty | None |
| **Claim 20:** Miller (*Id.*, PageID.17.) | Unauthorized communication | Feb. 2, 2022 | Feb. 8, 2022 | Guilty – Raised retaliation | Unknown |
| **Claim 21:** Miller (*Id.*, PageID.11-12.) | Lying to an employee | May 12, 2022 | May 26, 2022 | Refused to participate | Unknown |
| **Claim 22:** Miller (*Id.*, PageID.13.) | Cell Rules – Violation of Posted Rule #14 | May 25, 2022 | Unknown | Unknown | Unknown |

## VII.  Exhaustion Analysis

Defendants argue that many of the retaliation claims asserted against them are unexhausted.

12

### 1.  Claims 2 and 3

First, Defendant Miller argues that Plaintiff failed to exhaust Claims 2 and 3. In claim 2, Plaintiff alleged that Miller used derogatory language and threatened to plant a knife in Plaintiff's area of control if he did not stop writing grievances.   In claim 3, Plaintiff alleged that Miller used derogatory language, threatened him, and denied access to the shower.  Plaintiff filed grievances on these issues.  **URF-21-06-1560-28e** and **URF-21-06-1469-28e**.  Both grievances were rejected at Step III under MDOC PD 03.02.130 for "[m]issing the Step II response." (ECF 23-3, pageID.238, 242.)  *Jones*, 549 U.S. at 218-19 (dismissal is appropriate for failing to comply with grievance procedures).

In the opinion of the undersigned, Claims 2 and 3 should be dismissed due to Plaintiff's failure to properly exhaust his administrative remedies.

### 2.  Claims 4, 7, 8, and 19

Claims 4, 7, 8, and 19 each involve misconducts tickets received by Plaintiff. Defendants argue that Plaintiff failed to properly exhaust each of these retaliation claims.  The record before the Court indicates that Plaintiff did not raise a retaliation defense at the misconduct hearing, and pled guilty to each of these misconducts. (ECF No. 1-2, PageID.28 (Claim 4); ECF No. 23-4, PageID.265 (Claim 7); *Id.*, PageID.268 (Claim 8); ECF No. 1-1, PageID.18 (Claim 19).)  *Siggers*, 652 F.3d at 693-94.

Accordingly, it is the opinion of the undersigned that Claims 4, 7, 8, and 19 should be dismissed due to Plaintiff's failure to properly exhaust his administrative remedies.

### 3.  Claims 15, 16, 18, and 21

Claims 15, 16, 18, and 21 involve misconduct tickets received by Plaintiff. Defendants argue that Plaintiff failed to properly exhaust each of these retaliation claims.   The record before the Court demonstrates that Plaintiff did not raise retaliation during his misconduct hearings on these charges.   (ECF No. 1-1, PageID.21 (Claim 15); ECF No. 1-2, PageID.36 (Claim 16); ECF No. 23-4, PageID.281 (Claim 18); ECF No. 1-1, PageID.12 (Claim 21).)  *Siggers*, 652 F.3d at 693-94.

Accordingly, it is the opinion of the undersigned that Plaintiff failed to properly exhaust Claims 15, 16, 18, and 21.

## VIII.  Retaliation Analysis

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to establish a First Amendment retaliation claim, a plaintiff must show that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct.  *Id.*  To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019).

An adverse action is an action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. Misconduct tickets are often recognized as adverse actions sufficient to support a retaliation claim. *See Brown v. Crowley,* 312 F.3d 782 (6th Cir. 2002) (finding that the issuance of a major misconduct ticket, which subjected the prisoner to a risk of segregation, loss of good time, and a longer term of incarceration, was sufficiently adverse); *Maben v. Thelen*, 887 F.3d 252, 266–267 (6th Cir. 2018) (finding that the issuance of a minor misconduct ticket was sufficiently adverse where the prisoner lost privileges and could have been confined to his cell). Furthermore, "the threat of adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Hill v. Lapin*, 630 F.3d 630 F.3d 468, 472 (6th Cir. 2010).

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Sixth Circuit has employed a burden-shifting approach with respect to the causation element:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

### 1.  Claim 1

Defendant Doyle argues that Plaintiff cannot prove his retaliation claim that she spit in his face, used a racial name, and told  him to hang himself on October 1, 2021, because she was not aware of any prior grievances that Plaintiff had filed, making causation an impossibility.  (ECF No. 38, PageID.353.)   Defendant Doyle attests as follows:

> 4.    On October 1, 2021, I was not aware of any grievances that had been filed by Parham prior to my interaction with him that day.
>
> 5.    I have never encouraged anyone to file a false misconduct ticket on Parham.
>
> 6.    I did not retaliate against inmate Parham at any time.
>
> 7.    I never called Parham any racial slurs.  I never told him to kill himself.  I never spit in his face.  I never harassed Parham.

(ECF No. 38-6, PageID.391 (affidavit of Doyle).)

Plaintiff filed an unverified complaint and has not responded to Defendant's summary judgment motion.  In the opinion of the undersigned, Defendant Doyle met her burden of establishing that she is entitled to summary judgment on Plaintiff's retaliation claim.  It is recommended that the Court dismiss Claim 1.

### 2.  Claims 13 and 14

On September 28, 2021, Plaintiff was found guilty of two Class I misconducts. Previously, on September 23, 2021, Defendant Miller issued Plaintiff a disobeying a direct order misconduct, and Defendant Woodard issued Plaintiff a threatening

16

behavior and creating a disturbance misconduct ticket.  Defendants argue that since the hearing officer found that Plaintiff had committed the acts leading to his misconduct tickets, his retaliation claims fail because the hearing officer's findings have a preclusive effect.

The Sixth Circuit test for determining whether factual findings made within a Class I misconduct hearing are entitled to preclusive effect was established in *Peterson v. Johnson*, 714 F.3d 905, 912 (6th Cir. 2013) (citing *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986)) (rejecting the checkmate doctrine but upholding the preclusive effect of major misconduct hearing findings when appropriate factors are met).  Pursuant to *Peterson*, facts found during a Michigan prison hearing are given preclusive effect when (1) the state agency, in this case the Hearing Officer on behalf of the agency, was acting in a "judicial capacity," (2) the hearing officer resolved the disputed issue of fact that was properly before him or her, (3) the prisoner had a sufficient opportunity to litigate the issue, and (4) the findings of fact would be given preclusive effect by the Michigan courts.  *Maben*, 887 F.3d at 259, (*citing Peterson*, 714 F.3d at 911-13).  The Sixth Circuit in *Peterson* determined that a major misconduct hearing (*i.e.*, a Class I Misconduct Hearing) satisfies the first and last criteria as long as the other two criteria are satisfied.  *Peterson*, at 912-14.

The Misconduct Hearing Report on the disobeying a direct order misconduct is set forth below:

**CLASS I MISCONDUCT HEARING REPORT**

| Prisoner 636733 | Prisoner Name **Parham** | | Facility Code URF | Lock **S 221** | Violation Date 09/23/2021 |
|---|---|---|---|---|---|

Charge(s)
**Disobeying a Direct Order**

| If Charge Changed by Hearing Officer | Plea |
|---|---|
| | ☐ Guilty    ☒ Not Guilty |

| Misconduct Report Read to and Discussed with Prisoner | ☒ (check if applies) | No Hearing Investigation Requested |
|---|---|---|
| Hearing Investigation Read to and Discussed with Prisoner | ☒ (check if applies) | ☐ (check if applies) |

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

The hearing is conducted via video teleconferencing.  Unless otherwise noted all documents are one page.  The prisoner is present and the misconduct report is reviewed with him along with his statement that it is all in retaliation because of a grievance he wrote, Misconduct Assessment Form, and Misconduct Screening Form.  Prisoner Parham states it is in retaliation for a grievance.  When asked what did happen he said he would not answer any questions or say if he was given an order. Prisoner has nothing further to add.  No further evidence is needed.  Prisoner is informed of the findings, sanctions and sanction dates and told he will receive the report later.

**REASONS FOR FINDINGS**

Officer Miller gave a direct and reasonable order to Prisoner Parham to come down to the lobby on 9-23-21 at 1730 hrs. Prisoner Parham heard and understood the order because he replied "fuck that y'all come get me."  Prisoner Parham did not comply.  The order was capable of being performed, did not pose a signifcant risk of sustantial harm, and did not conflict with a prior harm.  Prisoner Parham's statement is not believed because if he was never given any questions or order he complied he would say what did happen, if he was given an order and if he was if he complied.  The Officer is clear and factual in his statement and is found to be credible.  The charge is upheld.

(ECF No. 23-4, PageID.271.)  Plaintiff's request for rehearing was denied because "the decision of the hearing officer was supported by competent, material, and substantial evidence." (*Id*., PageID.286.)

The Misconduct Hearing Report on the threatening behavior and creating a disturbance misconduct is set forth below:

18

| | | | | | Rev. 10/10 |
|---|---|---|---|---|---|

**CLASS I MISCONDUCT HEARING REPORT**

| Prisoner | Prisoner Name | | Facility Code | Lock | Violation Date |
|---|---|---|---|---|---|
| 636733 | Parham | | URF | S 221 | 09/23/2021 |

Charge(s)

**1 Threatening Behavior 2 Creating a Disturbance**

| If Charge Changed by Hearing Officer | Plea |
|---|---|
| | ☐ Guilty   ☒ Not Guilty |

| Misconduct Report Read to and Discussed with Prisoner  ☒ (check if applies) | No Hearing Investigation Requested |
|---|---|
| Hearing Investigation Read to and Discussed with Prisoner  ☒ (check if applies) | ☐ (check if applies) |

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

The hearing is conducted via video teleconferencing. Unless otherwise noted all documents are one page. The prisoner is present and the misconduct report is reviewed with him along with his statement that he did not say this and he was talking to another prisoner at the time and the officers had been heard saying he was not manageable and they were going set him up and it is all in retaliation because of a grievance he wrote, Misconduct Assessment Form, and Misconduct Screening Form. Prisoner Parham states it is in retaliation for a grievance. When asked what did happen he said he would not answer any questions or say what did happen. Prisoner has nothing further to add. No further evidence is needed. Prisoner is informed of the findings, sanctions and sanction dates and told he will receive the report later.

**REASONS FOR FINDINGS**

THREATENING BEHAVIOR: Prisoner Parham said loudly from B Wing "fuck these pigs we need to rise up and kill them all! They shoot us all the time its time for justice, its time to rise up!" on 9-23-21 at 1730 hrs. I find that this statement by its very nature expesses an intent to physically harm the officers. Prisoner Parham's statement is not believed because if he never said this then he would have wanted the prisoner he claims he was talking to as a witness to say what happened and what he did say. The Officer is clear and factual in his statement and is found to be credible. The charge is upheld.

CREATING A DISTURBANCE: No allegations were made of what exactly happened with the other prisoners that was a disturbance or delayed the days schedule. Without any allegations, I can not find there was a disturbance. The charge is NOT upheld.

(ECF No. 23-4, PageID.276.)  Plaintiff's request for rehearing was denied because "the decision of the hearing officer was supported by competent, material, and substantial evidence." (*Id.*, PageID.290.)

In both instances, the factual findings made during the Class I misconduct hearings have a preclusive effect because the record before the Court shows that all the requirements in *Peterson* have been met.  The hearing officer resolved disputed facts and specifically denied Plaintiff's retaliation claims.  The hearing officer's findings were upheld on appeal.  Accordingly, the record shows that Plaintiff had the opportunity to litigate the issue of whether he disobeyed a direct order and engaged in threatening behavior or whether Defendants issued both misconduct tickets in retaliation for his grievances.  The hearing officer found that Plaintiff committed both

19

acts of misconduct and that Defendants did not retaliate.  Plaintiff is now precluded from asserting otherwise in this case.

Nevertheless, this Court must determine whether a reasonable jury could find that Defendants issued the misconduct tickets due to Plaintiff's protected speech. *White v. McKay*, No. 22-192 (6th Cir., Nov. 17, 2023).  It is the opinion of the undersigned that no reasonable jury could conclude that Defendant Miller issued a disobeying a direct order misconduct and that Defendant Woodard issued a threatening behavior misconduct due to Plaintiff's protected speech.

Additionally, under MDOC policy, Woodard was **required** to write Plaintiff a Class I misconduct ticket due to his threatening statement.  The policy provides that "[a] Misconduct Report shall be written if the behavior constitutes a non-bondable Class I misconduct, as identified in Attachment A." (ECF No. 38-7, PageID.394 (Policy Directive 03.03.105(D)).)  This includes threatening behavior such as "[w]ords, actions, or other behavior which expresses an intent to injure or physically abuse another person." (*Id.*, PageID.409 (Attachment A).)  Plaintiff does not allege or show that Woodard usually let threatening behavior slide without consequence.  *See Thomas v. Eby*, 481 F.3d 434, 442 (6th Cir. 2007) (explaining that a plaintiff could still establish retaliatory motive where the misconduct charge was true by, for example, showing that he regularly engaged in the misconduct without consequence up until the protected conduct).

In the opinion of the undersigned, Defendant Woodard has met his burden of establishing that he would have written the threatening behavior misconduct ticket regardless of Plaintiff's protected conduct.

In the opinion of the undersigned, Defendants are entitled to summary judgment as to Plaintiff's retaliation claims 13 and 14.

### 3.  Claims 5, 6, 9, 10, 11, 12, 17, 20, and 22

The remaining retaliation claims arise from misconduct tickets issued by Defendants Miller and Soeltner.

Defendant Soeltner issued misconduct tickets to Plaintiff on July 31, 2021, for abuse of privileges (Claim 6: unauthorized use of a microwave) (ECF No. 1-3, PageID.55), and on September 17, 2021, for a violation of a posted rule (Claim 12: unauthorized loitering in B-wing) (*Id.*, PageID.56).

Defendant Miller issued misconduct tickets to Plaintiff on May 26, 2021, for excessive noise (Claim 5: loudly talking and being disruptive in the dayroom) (ECF No. 1-2, PageID.29-30), on August 16, 2021, for excessive noise (Claim 9: yelling and being disruptive while walking down B-wing) (ECF No. 1-1, PageID.26), on August 30, 2021, for unauthorized communication (Claim 10: yelling and being disruptive while waiting for his turn to take a shower) (*Id.*, PageID.25), on September 7, 2021, for insolence (Claim 11: making a derogatory comment to an officer) (ECF No. 23-4, PageID.269-270), on December 1, 2021, for excessive noise (Claim 17: yelling and being disruptive while waiting for his turn to take a shower) (ECF No. 1-1, PageID.20), on February 2, 2022, for unauthorized communication (Claim 20)  (*Id.*,

PageID.17), and on May 25, 2022, violation of a posted rule (Claim 22: passing item into an open cell on B-wing) (*Id.*, PageID.13).

Defendants argue that Plaintiff cannot establish the causation element of his retaliation claims because Defendants have shown that they would have taken the same action by issuing each of the misconduct tickets regardless of Plaintiff's protected activity.  (ECF No. 40-1, PageID.420 (affidavit of Soeltner); ECF No. 38-3, PageID.382-383 (affidavit of Miller).)

Plaintiff has failed to rebut Defendants' showing that they issued the misconduct tickets due to Plaintiff's behavior and that they would have taken the same action regardless of whether Plaintiff engaged in protected conduct.  Plaintiff has failed to present any admissible evidence to the Court which could arguably establish that genuine issue of material fact exists on his retaliation claims.

## IX. Immunity

Defendants also argue that entitlement to qualified immunity because it cannot be disputed that they issued the misconduct tickets due to Plaintiff's behavior and that Plaintiff is unable to prove the causation element of his retaliation claims. (ECF No. 38, PageID.359.)  Defendants' claim for qualified immunity is largely redundant.   Defendants argue that because they did not violate Plaintiff's constitutional rights they are entitled to qualified immunity.[5]  In any event, the undersigned agrees; because there are no genuine issues of material fact and it is the

---

[5]    In other words, Defendants do not argue that the rights at issue were not clearly established.

undersigned's opinion that Defendants are entitled to qualified immunity in their individual capacity.  *See Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) ("Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).

Defendants' claim for sovereign immunity is different.  Defendants argue that they are entitled to sovereign immunity in their official capacity as to  Plaintiff's claim for monetary damages regardless of whether the claim has merit.

A lawsuit against a state official for monetary damages is treated as a lawsuit against the State.  *Brandon v. Holt*, 469 U.S. 464, 471 (1985).  The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993).  Section 1983 did not expressly abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  As such, it is the undersigned's opinion that Plaintiff's claim against Defendants in their official capacity for

monetary damages are properly dismissed in accordance with the Eleventh Amendment.

### X.  Recommendation

The undersigned respectfully recommends that this Court grant Defendants' motion for summary judgment and dismiss the complaint.


Dated:   February 11, 2025                    /s/ *Maarten Vermaat*
                                              MAARTEN VERMAAT
                                              U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).